UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERGINE KANOUNO and
DAVID KANOUNO,

                    Plaintiffs,                    No. 10-CV-14724

vs.                                                Hon. Gerald E. Rosen

SUNTRUST MORTGAGE, INC.,

                    Defendant.
_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ November 30, 2011 _____

PRESENT:   Honorable Gerald E. Rosen
           United States District Chief Judge

I. INTRODUCTION

This action seeking to quiet title to foreclosed property is presently before the

Court on Defendant SunTrust Mortgage, Inc.'s Motion for Dismissal, Summary

Judgment, and Judgment on the Pleadings filed after the close of discovery on July 1,

2011.  Plaintiffs Vergine and David Kanouno have not responded to Defendant's Motion

despite having been given more than ample opportunity to do so.[1]  However, having

_____

[1]  Plaintiffs, in fact, have done virtually nothing to prosecute this matter.  They
repeatedly delayed discovery in this case, necessitating Defendant to file more than one

1

reviewed Plaintiffs' Complaint, Defendant's Motion and the exhibits attached thereto,[2] the Court has concluded that oral argument would not assist in the resolution of this matter.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will dispense with any hearing and will decide this motion based on the record as it presently exists, including the brief filed by Defendant in support of its dispositive motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Vergine Kanouno obtained title to property located in Bloomfield Hills, Michigan in January 2003 through a quit claim deed.  On September 7, 2006, Mrs. Kanouno entered into a Mortgage Loan Origination Agreement with a non-party mortgage broker, Capital Star Mortgage Company, in order to seek a refinance loan.  The Broker Agreement Mrs. Kanouno executed with Capital Star provided that Capital Star is an independent contractor and that it enters into independent contractor agreements with

---

motion to compel; failed to file pretrial disclosures, failed to file any witness lists, and have ignored Court orders.  After ignoring the Court's last order commanding them to provide Defendant with requested discovery, on July 18, 2011, the Court sanctioned Plaintiff's counsel, Julian Levant, and ordered him to pay Defendant $500 as sanctions for delaying discovery.  [*See* 7/18/11 Order, Dkt. # 23.]  Mr. Levant has ignored that order for more than three months and has not yet paid Defendant the $500 ordered.  [*See* 10/20/11 Notice of Plaintiff's Failure to Respond to Dispositive Motion and Failure to Comply with Court Order, Dkt. # 24.]

[2] The exhibits submitted as support for Defendant's motion include all pertinent loan, mortgage and real property documents, the Affidavit of SunTrust's Vice-President Thomas Switzer, and Plaintiffs' Answers to Defendant's Interrogatories and Request for Admission.

lenders.

After applying for a loan with Capital Star, Mrs. Kanouno was approved for a mortgage loan with SunTrust.  On the Loan Application that Mrs. Kanouno signed, she asserted that she had an income of $16,000.00 per month.  On September 21, 2006, Mrs. Kanouno closed on refinancing loan in the amount of $490,000.00.  As security for the loan, Mrs. Kanouno executed a promissory note secured by a mortgage on the Bloomfield Hills property.  Mrs. Kanouno's husband, David, also signed the mortgage agreement although he is not a record title holder to the property.

At the closing, the Kanounos received and signed a Truth-In-Lending Disclosure Statement and Notices of Right to Cancel.  Mrs. Kanouno also received a HUD Settlement Statement detailing allocation of various costs and charges associated with the loan.  Mrs. Kanouno signed the HUD Statement and certified under penalty of perjury that she had carefully read the document.

Mrs. Kanouno ceased making payments on the loan in July 2009.  Pursuant to its rights under the mortgage, SunTrust foreclosed on the property and purchased it at a Sheriff's sale on March 23, 2010.  The statutory redemption period expired on September 23, 2010.

On September 27, 2010, Plaintiffs filed the instant action in Oakland County Circuit Court.  Defendant SunTrust was served with the Complaint on November 5, 2010 and removed the case to this Court on November 29, 2010.

In their eight-count Complaint, Plaintiffs make various allegations concerning the

3

mortgage loan origination and seek to void the foreclosure sale of the property.  In

Count I ("Fraudulent Misrepresentations"), Plaintiffs allege that SunTrust intentionally

misrepresented:  (1) that Mrs. Kanouno's income qualified her for the loan; (2) that the

appraisal she was required to purchase established that the value of the property exceeded

the amount of the loan; (3) that the interest rates and settlement charges described in the

HUD Statement were lawful; and (4) that all conditions contained in the closing package

had been fully disclosed as required by law.

In Count II Plaintiffs assert a claim of Violation of Michigan's Mortgage Brokers,

Lenders and Servicer Licensing Act, M.C.L. § 445.1651 *et seq*.  Count III of Plaintiff's

Complaint is captioned "Breach of Contract".  This Count contains essentially the same

misrepresentation/failure to disclose allegations as Count I.

In Counts IV through VI, Plaintiffs allege violations of various state and federal

statutes.  In Count IV, Plaintiffs allege a claim of violation of Michigan's foreclosure by

advertisement statute, M.C.L. § 600.3204 *et seq*.  In Count V, Plaintiffs assert a claim of

violation of the federal Real Estate Settlement Procedures Act (RESPA) and Truth-In-

Lending Act (TILA), and in Count VI Plaintiffs claim a violation of the Home Ownership

and Equity Protection Act (HOEPA).

Count VII is captioned "Quiet Title."  In this Count, Plaintiffs seek an

extinguishment of any claim in the property made by Defendant based upon a compilation

of the various allegations of fraudulent misrepresentation and statutory violations made in

Counts I through VI.  Finally, Count VIII contains Plaintiffs plea for injunctive relief to

4

restrain and enjoin Defendant from taking possession of the property.[3]

<u>DISCUSSION</u>

Defendant SunTrust's motion is structured as a Fed. R. Civ. P.12(b)(6) motion to dismiss, a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, and, in the alternative, as a motion for summary judgment. SunTrust supports its motion with exhibits outside the pleadings and which are not referenced in Plaintiff's Complaint, Federal Rule of Civil Procedure 12(d) requires that the motion be "treated as one for summary judgment under Rule 56." *See* Fed. R. Civ. Proc. 12(d).  Therefore, the Court's consideration of the matter will proceed pursuant to Fed. R. Civ. P. 56.

Under Federal Rule of Civil Procedure 56, a motion for summary judgment will be granted if the moving party can show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To demonstrate that there is no genuine issue of material fact, the movant must use the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ.

---

[3]  On October 23, 2010, after Plaintiffs filed their Complaint in the instant action but before SunTrust was served with process, SunTrust filed a summary eviction proceeding in the 48th District Court seeking to evict Plaintiffs and to take possession of the foreclosed property.  The court, however, stayed the eviction proceedings pending the disposition of this action.  Mrs. Kanouno was ordered to pay $3,000.00 per month to the court as rent to be held in escrow.  According to Defendant, to date Plaintiffs have failed to pay any amount to the court.

Proc. 56(c)(1)(A).  A material fact is one that would affect the outcome of the suit, as determined by the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue is one that the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006).  Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed."  Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment."  *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

Applying the foregoing standards, the Court concludes that Defendant SunTrust's motion for summary judgment should be granted for the following reasons.

B.     PLAINTIFFS' CLAIMS IN COUNTS I AND III ARE BARRED BY THE STATUTE OF FRAUDS

Plaintiffs' claims in Counts I and III for fraudulent misrepresentation and breach of contract are based upon alleged misrepresentations made to them in connection with the loan's origination.  Plaintiffs concede, however, that Defendant SunTrust was not present at the loan origination.  [*See* Plaintiffs' Response to Interrogatory No. 8, Defendant's Ex. 22 (stating that communications with SunTrust occurred after the

6

closing and by mail).  And, Plaintiffs have come forward with no evidence to establish

that SunTrust had an agency relationship with Capital Star.  Plaintiffs may not rely on the

mere allegation that Capital was an agent of SunTrust.  But even if an agency relationship

were established, Plaintiffs' misrepresentation and breach of contract claims are

precluded by the statute of frauds.

The statute of frauds requires certain types of agreements to be in writing before

they can be enforced.  Michigan's statute of frauds, M.C.L. § 566.132, provides, in

relevant part:

> (2) An action shall not be brought against a financial institution to enforce
> any of the following promises or commitments of the financial institution
> unless the promise or commitment is in writing and signed with an
> authorized signature by the financial institution:
>
>> (a) A promise or commitment to lend money, grant or extend
>> credit, or make any other financial accommodation.
>>
>> (b) A promise or commitment to renew, extend, modify, or
>> permit a delay in repayment or performance of a loan,
>> extension of credit, or other financial accommodation.
>>
>> (c) A promise or commitment to waive a provision of a loan,
>> extension of credit, or other financial accommodation.
>
> (3) As used in subsection (2), "financial institution" means a state or
> national chartered bank, a state or federal chartered savings bank or savings
> and loan association, a state or federal chartered credit union, or a person
> licensed or registered under the mortgage brokers, lenders, and servicers
> licensing act, Act No. 173 of the Public Acts of 1987, being sections
> 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of
> the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan
> Compiled Laws, or an affiliate or subsidiary thereof

M.C.L. § 566.132(2), (3).

The intent of the Michigan Legislature in adding the provisions in subsection (2) of the statute was to address an area of concern in the banking industry, i.e., oral promises made in connection with lending and credit activities. *Crown Technology Park v. D&N Bank, FSB*, 242 Mich. App. 538, 549, 619 N.W.2d 66, 71 (2000). The language of the statutory amendment is intentionally broad. *Id.* As the court observed in *Crown Technology,* under the broad, unambiguous language in the statute, "a party is precluded from bringing a claim -- *no matter its label* -- against a financial institution to enforce the terms of an oral promise. . . ." 242 Mich. App. at 550, 619 N.W.2d at 72 (emphasis added).

The court explained:

> By not specifying what sort of "action" M.C.L. § 566.132(2); MSA 26.922(2) prohibits, we read this as an unqualified and broad ban. We also note that the subsections of M.C.L. § 566.132(2); MSA 26.922(2) use generic and encompassing terms to describe the types of promises or commitments that the statute of frauds now protects absolutely. This is consistent with interpreting M.C.L. § 566.132(2); MSA 26.922(2) to preclude all actions for the enumerated promises and commitments . . . , including actions for promissory estoppel. . . . [A]s we noted above, the Legislature used the broadest possible language in M.C.L. § 566.132(2); MSA 26.922(2) to protect financial institutions by not specifying the types of "actions" it prohibits, eliminating the possibility of creative pleading to avoid the ban. . . . It banned "an action," meaning *any* action.

*Id.* 242 Mich. App. at 550-53, 619 N.W.2d at 72-3(emphasis in original).

In *Crown Technology* the court determined that the statute of frauds barred an action brought against a bank for promissory estoppel that was predicated on oral

promises made in connection with a mortgage loan refinancing transaction. In subsequent

cases, Michigan courts determined that fraud and misrepresentation claims against

financial institutions that are based on oral promises are likewise barred.  *See e.g*.,

*Republic Bank v. Britton Estates*, 2006 WL 445916 (Mich. App. 2006) (affirming trial

court's grant of summary disposition on the appellants' claims of fraud and

misrepresentation holding that the claims were "precluded by the statute of frauds, the

applicability of which is not dependent on the label attached to appellants' cause of

action." *Id.*); *see also Manire v. American Equity Mortgage, Inc.*, 2005 WL 2173679 at

\*2 (E.D. Mich. 2005) (misrepresentation claim precluded); *LaSalle Bank Nat'l Ass'n v.*

*Ray*, 2011 WL 576661 at \*\*3-4 (E.D. Mich. 2011) (same).

The foregoing authorities establish that Plaintiffs' claims for fraudulent misrepresentation and breach of contract in this case are not actionable.[4]  Therefore, Defendant's motion for summary judgment will be granted on Counts I and III.

C.    PLAINTIFFS HAVE FAILED TO STATE AN MBLSLA CLAIM

In Count II, Plaintiffs claim that Defendant violated the Mortgage Brokers, Lenders and Servicers Licensing Act, M.C.L. § 445.1651 *et seq*.  Section 1672 of the statute sets forth the actions that can form a violation of the MBLSLA.  In pertinent part, this section provides:

It is a violation of this act for a licensee or registrant to do any of the following:

(a) Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act.

---

[4]  Further, Fed. R. Civ. P. 9 requires that fraud be pled with particularity.  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The Rule's purpose is to alert defendants "as to the particulars of their alleged misconduct" so that they may respond. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 501 F.3d 493, 503 (6th Cir.2007). The heightened pleading standard is also designed to prevent "fishing expeditions," *id*. at 503 n. 11, to protect defendants' reputations from allegations of fraud, *ibid*., and to narrow potentially wide-ranging discovery to relevant matters. *United States ex rel. SNAPP, Inc. v. Ford Motor Company*, 532 F.3d 496, 504 (6th Cir.2008).  Though Fed. R. Civ. P. 8 requires only "a short, plain statement of the claim," the Sixth Circuit has instructed that when fraud is alleged, Rule 8 is to be read in conjunction with Rule 9. *Bledsoe, supra*.  To plead fraud with particularity, the plaintiff must allege (1) "the time, place, and content of the alleged misrepresentation," (2) "the fraudulent scheme," (3) the defendant's fraudulent intent, and (4) the resulting injury.  *Bledsoe*, 501 F.3d at 504.
As detailed by Defendant in its brief, Plaintiffs' Complaint contains insufficient factual allegations to satisfy these Rule 9's particularity standards and further demonstrates that Plaintiffs have failed to state a claim of fraudulent misrepresentation.

(b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.

(c) Intentionally or due to gross or wanton negligence, repeatedly fail to provide borrowers material disclosures of information as required by law.

§ 445.1672 (a)-(c).

Plaintiffs attempt to make out a claim of violation of the MBLSLA based upon the alleged misrepresentations discussed above [*see* Complaint, ¶¶ 23-24].  However, they have not pled any facts illustrating how the act was violated by SunTrust inasmuch as SunTrust was not present at the loan origination, and Plaintiff's claims of misrepresentation arise out of the loan origination.  To the extent that they allege that SunTrust and/or Capital Star entered into an agreement with the appraiser to inflate the value of the Property [*see* Complaint, ¶ 25], Plaintiffs have not established that the appraisal was inaccurate in any manner, that there was any sort of agreement between SunTrust and the unnamed appraiser, or, as discussed above, that SunTrust is liable for any agreement purportedly entered into by Capital Star.  The only "evidence" they have of an allegedly "unethical agreement" with regard to the appraisal is the HUD Settlement Statement which shows only that an appraisal was paid for at closing. [*See* Plaintiffs' Response to Document Production Request No. 22, Defendant's Ex. 12.]  This is insufficient evidence of a violation of the MBLSLA.  Count II, therefore, will be dismissed for failure to state a claim.

D.     PLAINTIFFS CANNOT OBTAIN THE RELIEF THEY SEEK IN COUNTS IV, VII AND VIII

11

In Counts IV, VII, and VIII, Plaintiffs seek, under various theories, the reversal of the foreclosure sale, an order enjoining their eviction, and an order quieting title to the property. In Count IV, Plaintiffs seek a declaratory judgment declaring that the Defendant may not proceed with foreclosure and dispossession of their property due to Defendant's alleged non-compliance with the foreclosure by advertisement statute. In Count VIII, Plaintiffs similarly ask for an injunctive order preventing Defendants from dispossessing them or interfering with their possession of the property. In Count VII, Plaintiffs seek an order quieting title to the property to them.

As set forth below, however, Plaintiffs' claims fail because—once the redemption period following foreclosure of a property has expired—the former owner's rights in and title to the property are extinguished. At that point, the former owner loses standing to assert claims with respect to the property. This principle is well-established. In *Piotrowski v. State Land Office Board*, 302 Mich. 179, 4 N.W.2d 514 (1942), the Michigan Supreme Court held that the mortgagors had "lost all their right, title, and interest in and to the property at the expiration of their right of redemption." *Id*. at 185, 4 N.W.2d 514. The standard under *Piotrowski* has been applied by Michigan courts, and by federal courts applying Michigan law, to bar former owners from making any claims with respect to foreclosed property after the end of the redemption period. *See e.g., Stein v. U.S. Bancorp*, 2011 WL 740537 (E.D. Mich. Feb.24, 2011); *Overton v. Mortg. Elec. Registration Sys.*, 2009 WL 1507342 (Mich. App. May 28, 2009) (dismissing former

owner's claim of fraud where redemption period had expired); *Kama v. Wells Fargo Bank*, 2010 WL 4386974, *2 (E.D. Mich., Oct. 29, 2010) (dismissing plaintiff's claims for violation of the foreclosure statute, to quiet title and for promissory estoppel because redemption period had expired); *Moriarty v. BNC Mortg., Inc*., 2010 WL 5173830 (E.D. Mich. Dec.15, 2010) (dismissing action for declaratory judgment voiding foreclosure proceedings).

Furthermore, "[t]he law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity."  *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784 (1969); *see also Sweet Air Investment, Inc, v. Kenney*, 275 Mich. App. 492, 497, 729 N.W.2d 656 (2007) ("The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Id.  quoting United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich., 1997)).

In the present case, the redemption period expired on September 23, 2010 -- before Plaintiffs commenced this lawsuit.  Plaintiffs have not pled any facts to allege that they timely attempted to redeem the property. Therefore, unless Plaintiffs can make a clear showing of fraud or irregularity, no equitable extension of the period to redeem their property is allowed and Plaintiffs will lack standing to challenge the foreclosure of,

and their eviction from, the property.  Alleging that the foreclosure notices failed to comply with the requirements of the foreclosure by advertisement statute -- which is all that Plaintiffs' here have done -- is insufficient.

Furthermore, even if Plaintiffs could make a clear showing that the foreclosure notices were defective, Plaintiffs still could not set aside the sheriff's deed.  A "defect in notice renders a foreclosure sale voidable and not void." *Jackson Investment Corporation, v. Pittsfield Products, Inc.*, 162 Mich. App. 750, 756, 413 N.W.2d 99 (1987).  In so ruling, the court reasoned that such a holding (1) gives security "to the title for real property" and (2) "allows for an examination of whether any harm was caused by the defect." *Id.*  The sale should not be automatically nullified without considering the harm suffered by the mortgagor or the interests of intervening third parties.  *Id.*  This is especially true in a case where "the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property."  *Id.  See also Sweet Air Investment, Inc. v. Kenney*, 275 Mich. App. 492, 503, 739 N.W.2d 656 (2007) (holding that a defect in the foreclosure notice is "insufficient grounds to invalidate the foreclosure sale, because of a lack of prejudice").  *In Sweet Air Investment*, the defendants waited until the plaintiff instituted eviction proceedings against them to challenge the foreclosure sale.  *Id.*  There was no effort to timely challenge the validity of the foreclosure sale or to redeem the

property within the redemption period. *Id*. Based on these facts, no prejudice was shown. *Id*.

In the present case, Plaintiffs cannot show that they were prejudiced from any alleged defect in the notice. Plaintiffs, like the defendants in *Sweet Air Investment*, waited until after the redemption period expired to challenge the validity of the foreclosure sale. Plaintiffs have not pled any facts nor have they offered any evidence to show that any defect in the notice (1) prevented them from making a bid at the sale; (2) that they possessed the funds to outbid the highest bid let alone to pay the entire unpaid balance owing on the loan; (3) that they attempted to redeem the property during the redemption period; or (4) that they were prejudiced in any other way. Based on the foregoing, Plaintiffs cannot show that they were prejudiced and that the sheriff's deed should be set aside. Summary judgment will, therefore, be granted in favor of Defendant on Counts IV, VII and VIII.

E.   <u>PLAINTIFFS' TILA, HOEPA, AND RESPA CLAIMS ARE TIME-BARRED.</u>

Finally, in Counts V and VI, Plaintiffs allege claims of violation of the Real Estate Settlement Procedures Act (RESPA), the Truth-in-Lending Act (TILA), and the Home Ownership and Equity Protection Act (HOEPA). Claims for damages under TILA, HOEPA and RESPA are subject to the statutes of limitations set forth in 15 U.S.C. § 1640 and 12 U.S.C. § 2614.

1.   *The TILA and HOEPA Claims are Barred by a 1-year Statute of Limitations and a 3-year Statute of Repose.*

15

15 U.S.C. § 1640(e) provides, "Any action under this section may be brought . . . within one year from the date of the occurrence of the violation."  This one-year statute of limitations applies to both TILA and HOEPA claims.  *Thielen v. GMAC Mortgage Corp*., 671 F. Supp. 2d 947, 953 (E.D. Mich. 2009); *see also Girgis v. Countrywide Home Loans, Inc*., 2010 WL 3290985 * 6 (N.D. Ohio, Aug.20, 2010) (Since HOEPA is an amendment to TILA, and the former is incorporated into the latter, the same statute of limitations prescribed under 15 U.S.C. § 1640(e) applies).   Here, Plaintiffs' claims for damages are based on alleged wrongdoings before or at the closing of the mortgage on September 21, 2006.  To have been timely then, Plaintiffs would have had to have initiated this action by September 21, 2007.  However, Plaintiffs did not file their Complaint in this action until September 27, 2010 -- more than three years after the loan closing. Therefore, their TILA and HOEPA claims are time-barred.

However, TILA and HOEPA statute of limitations is subject to equitable tolling in suits between private parties where fraudulent concealment is present.  *See Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 908 (E.D. Mich. 2003), *aff'd*, 172 Fed. App'x 652 (6th Cir. 2006); *Jones v. TransOhio Savs. Ass'n.*, 747 F.2d 1037, 1041 (6th Cir. 1984). To establish fraudulent concealment, a plaintiff has to show that "(1) the defendant took affirmative steps to conceal the plaintiff's cause of action; and (2) the plaintiff could not have discovered the cause of action despite exercising due diligence." *Mills*, 294 F. Supp. 2d at 908; *see also Jarrett v. Kassel*, 972 F.2d 1415, 1423 (6th Cir.1992), *cert. denied*, 507 U.S. 916 (1993).

16

Here, Plaintiffs have not alleged let alone established that Defendants affirmatively took steps to conceal their cause of action. Plaintiffs only allege that they were not provided with notices and disclosure statements. This alone cannot support equitable tolling. *See In re Community Bank of Northern Virginia*, 467 F. Supp. 2d 466, 479 (W.D. Pa. 2006) ("[T]he fraudulent act(s) that provide the factual predicate for the claim, i.e., inaccurate loan documents, cannot also satisfy the factual predicate justifying the equitable tolling."). Furthermore, Plaintiffs have not demonstrated that despite exercising due diligence, the cause of action could not be discovered. Therefore, Plaintiffs' TILA and HOEPA damage claims are time-barred by the statute of limitations.

In addition to having a statute of limitations, TILA and HOEPA claims are also subject to a three-year statute of repose. Statutes of repose limit the time in which an action may be brought, regardless if the injury has occurred or been discovered yet. Under 15 U.S.C. § 1635(f), "An obligor's right of rescission shall expire three years after the date of consummation of the transaction . . . notwithstanding the fact that the . . . disclosures required under this part have not been delivered to the obligor." This statute provides that an action for rescission must be brought within three years of the loan closing, even if disclosure forms have not been given to the plaintiff. Here, the consummation of the transaction took place on September 21, 2006. Plaintiffs did not file their claim until September 27, 2010 -- beyond the three-year period of repose. As stated, it does not matter that Plaintiffs allege that they was not provided with disclosures.

17

Furthermore, tolling principles do not apply with statutes of repose because they are meant to serve as a cut-off. *See Lampf v. Gilbertson*, 501 U.S. 350, 363 (1991).

Consequently, the statute of limitations and the statute of repose set forth in 15 U.S.C. §§ 1635 and 1640, bar Plaintiff's TILA and HOEPA claims in this action.

2.     *The RESPA Claims are Barred by 1- and 3-year Statutes of Limitations.*

Under RESPA, "Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought . . . within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . ." 12 U.S.C. § 2614. Section 2605 addresses the requirements of disclosures, while section 2607 covers fee splitting arrangements. Courts have held that the one- and three-year-limitation periods begins to run on the date of the closing of the mortgage loan. *See e.g.*, *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-60 (5th Cir. 2003); *Vatomanyuk v. Quality Loan Service Corp. of Wash.*, 699 F. Supp. 2d 1242. 1244 (W.D. Wash. 2010); *Palmer v. Homecomings Financial LLC*, 677 F. Supp. 2d 233, 237 (D.D.C. 2010); *Kamara v. Columbia Home Loans, LLC*, 654 F. Supp. 2d 259, 265 (E.D. Pa. 2009); *Poskin v. TD Banknorth*, 687 F.Supp.2d 530, 550-53 (W.D. Pa. 2009).

In their Complaint, Plaintiffs do not specify which provisions of RESPA were violated. They only complain that they were not provided disclosures as required under the statute. [*See* Complaint, ¶ 35]. Therefore, their claim would fall within the scope of Section 2605. According to the statute of limitations, Plaintiff has three years from the

18

occurrence of the violation to bring an action under section 2605.  Plaintiff is alleging that the disclosure violations occurred during the mortgage loan closing on September 21, 2006; however, as indicated above, Plaintiffs' Complaint was not filed until September 27, 2010.  Therefore, Plaintiffs' claims under Section 2605 of RESPA are time-barred.

As stated, the claims Plaintiff brings under RESPA are time-barred -- unless equitable tolling applies to extend the limitation period.  Although the Sixth Circuit has yet to officially address whether equitable tolling applies to RESPA, it has recognized that many district courts have.  *See Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 421 n. 10 (6th Cir. 2009) (collecting cases).[5]  A majority of the district courts have held that equitable tolling applies to RESPA claims for the 1- and 3-year statutes of limitations. *See, e.g.*, *Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 594-95 (D. Md. 2009); *Blaylock v. First American Title Ins. Co.*, 504 F. Supp. 2d 1091, 1107 (W.D. Wash. 2007); *Mullinax v. Radian Guaranty Inc.*,199 F. Supp.2d 311, 328 (M.D.N.C. 2002); *Pedraza v. United Guaranty Corp.*, 114 F. Supp.2d 1347, 1353 (N.D. Ga. 2000); *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 793-96 (D. Md. 1998); *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 700 F. Supp. 1284, 1286-89 (S.D.N.Y. 1988).  Moreover, as noted above, the Sixth Circuit has applied equitable tolling to the TILA.  *See Jones v. TransOhio Sav.*

---

[5]  The Sixth Circuit found it unnecessary in *Egerer* to decide the question of whether equitable tolling applied to RESPA.  ("Because plaintiffs cannot prevail on their tolling argument even assuming that the RESPA statute of limitations were subject to equitable tolling, it is not necessary to decide that question in this case." 556 F.3d at 424 n. 18.)

*Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984).  Therefore, for purposes of Defendant's

motion, the Court will assume that equitable tolling applies to RESPA, as well.

The Sixth Circuit has considered five factors when determining whether to toll a

statute of limitations: (1) lack of notice of the filing requirement; (2) lack of constructive

knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of

prejudice to the defendants; and (5) plaintiff's reasonableness in remaining ignorant of the

particular legal requirement.  *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

In addition, as the Sixth Circuit noted in *Egerer v. Woodland Realty, supra*, in order to

establish equitable tolling by the doctrine of fraudulent concealment, the plaintiff must

allege and establish that: (1) defendants concealed the conduct that constitutes the cause

of action; (2) defendants' concealment prevented plaintiffs from discovering the cause of

action within the limitations period; and (3) until discovery, plaintiffs exercised due

diligence in trying to find out about the cause of action.  556 F.3d at 422.  Plaintiffs have

failed to allege any facts that would establish entitlement to equitable tolling under either

framework.

<u>CONCLUSION</u>

For all of the reasons set forth above in this Opinion, the Court concludes that

Plaintiffs have failed to state any claim upon which relief may be granted and Defendant

is entitled to judgment as a matter of law.  Therefore,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment

**[Dkt. # 21]** be, and hereby is, GRANTED.  Accordingly,

IT IS FURTHER ORDERED that Plaintiffs' Complaint be, and hereby is,

DISMISSED, in its entirety, WITH PREJUDICE.

Let Judgment be entered accordingly.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  November 30, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record
on November 30, 2011, by electronic and/or ordinary mail.

s/Ruth A. Gunther_____
Case Manager